

**ORDERED in the Southern District of Florida on August 29, 2022.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

_____

*Tagged Opinion*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

In re:

No Rust Rebar, Inc.,

      Debtor.
_____/

Case No. 21-12188-PDR

Chapter 7

## MEMORANDUM OPINION ON
## ORDER GRANTING MOTION TO COMPROMISE CONTROVERSY

    This matter came before the Court on August 17, 2022, on the Trustee's *Motion to Compromise Controversy* (the "Settlement Motion").[1] Following the hearing and upon review of the Settlement Motion and the related Objection,[2] the Court granted

---

[1] (Doc. 218).

[2] (Doc. 245).

the Settlement Motion.³ This memorandum opinion clarifies and explains the Court's ruling.

## **Background**⁴

In January 2015, Don Smith founded No Rust Rebar, Inc. to manufacture structural reinforcement products that do not rust. No Rust contracted to purchase industrial real estate in Pompano Beach, Florida, but after placing a nonrefundable deposit, did not have the funds necessary to close on the Property. No Rust agreed to assign its right to purchase the Property to Green Tech Development, LLC. In January 2016, Green Tech bought the Property and No Rust remained in possession. No Rust asserts Green Tech provided it with an oral option to purchase the Property, but Green Tech contends there was no such option. Both parties agree that there is no signed written agreement memorializing the purported option. In November 2016, Smith sought to exercise No Rust's purported option by filing a Notice of Election to Purchase Real Property, but Green Tech refused to sell. Less than a month later, No Rust sued Green Tech for specific performance; Green Tech countered seeking No Rust's ejectment and damages for civil trespass (collectively, the "Property Dispute").

No Rust is not Smith's only entity, and many of his other entities conduct business and/or store personal property in the Property. These entities include Raw Energy Materials, Corp., Raw, LLC, Rock Rebar, Inc., Smith Boat Designs, Inc., Raw

---

³ (Doc. 257).

⁴ The Court has detailed the background of this case on numerous occasions and adopts its previous findings for purposes of this ruling. *See* (Doc. 193); *In re No Rust Rebar, Inc.*, 641 B.R. 412 (Bankr. S.D. Fla. 2022); *No Rust Rebar, Inc. v. Green Tech Development, LLC (In re No Rust Rebar, Inc.)*, No. 21-01111-PDR (Doc. 72), 2021 WL 4314221 (Bankr. S.D. Fla. Sept. 22, 2021).

Materials Corp., and Global Energy Sciences, LLC. Further, Smith has a personal and professional relationship with Elina Jenkins, and her entities—Basalt World Corp. and Yellow Turtle Design, LLC—also operate out of the Property.

On March 5, 2021, No Rust filed this Chapter 11. Shortly thereafter, No Rust removed the Property Dispute which remains pending.[5] Green Tech filed a conditional proof of claim in the case (the "Claim") of nearly $2 million, $300,000.00 of which is secured by a bond posted in state court as part of the Property Dispute (the "Bond"). In November 2021, No Rust objected to the Claim. In May 2022, the Court converted the case from a Chapter 11 to a Chapter 7, and the Trustee was appointed. The Court converted the case for many reasons, including Smith's commingling of No Rust's assets with his personal assets and assets owned by his other entities, thereby creating an incurable conflict of interest with respect to investigating in good faith the Estate's interest in various potential fraudulent transfer, preferential transfer, and avoidance actions.[6]

Since her appointment, the Trustee has apparently worked to identify the Estate's assets and the best prospects for recovery. The Trustee promptly visited the Property and determined that certain hazardous materials needed to be removed. Shortly thereafter, the Trustee requested permission to abandon any remaining personal property of the Estate on the Property and dispose of any remaining personal property not belonging to the Estate, including that which belong to Smith's

---

[5] *See* Nos. 21-01111-PDR & 21-01112-PDR.

[6] The Court noted that at least one transaction may constitute "a postpetition sale of undisclosed property of the estate without court approval." (Doc. 193 at 22).

and Jenkins's other entities. The Trustee's Motion to Abandon further explained that the request was based on her desire to settle the dispute with Green Tech. The Court granted that request. In early August 2022, the following filed claims in this case: Don Smith, Global Energy Sciences, Raw Energy Materials, and Yellow Turtle Design (the "Objecting Creditors").

## The Settlement Motion

The Proposed Settlement seeks to resolve all issues between the Estate and Green Tech. Its cornerstone includes a sale of the Property that resolves the Property Dispute. The minimum bid for the sale of the Property under the Proposed Settlement and the related bidding procedures is $3,000,000.00.[7] The net proceeds of the sale, after paying all closing fees and resolving all unpaid liens, will be distributed as follows:

| Amount | Green Tech | Estate |
| --- | --- | --- |
| $0.00–$1,000,000.00 | 100% | 0% |
| $1,000,000.01–$1,500,000.00 | 65% | 35% |
| $1,500,000.01+ | 50% | 50% |

At the hearing, the Trustee noted that the expected total recovery for the Estate under the Proposed Settlement if the Property is sold for $3,000,000.00 is approximately $500,000.00, of which approximately $320,000.00 would result from the sale. The additional funds result from Green Tech's agreement to pay the remaining value of the Bond (approximately $182,000.00) to the Estate regardless of

---

[7] *See* (Docs. 218 & 219).

the results of the sale (the "Net Cash Bond").[8] Green Tech would otherwise be entitled to the entirety of the Net Cash Bond if, as expected by the Trustee, it were to prevail in the Property Dispute.

In exchange, the Estate agreed to provide Green Tech with a $2,500,000.00 allowed general unsecured claim based, at least in part, on its "substantial contribution . . . during the nearly 15-month course of the Chapter 11 phase of this case, which contribution has materially advanced the litigation prospects of the Estate." The Trustee explained that the proposed claim for Green Tech includes a substantial contribution administrative claim to which she believes Green Tech would be entitled. Under the Proposed Settlement, Green Tech has agreed to voluntarily subordinate that claim and incorporate it into a single general unsecured claim. The Proposed Settlement further provides Green Tech, based again on its substantial contribution, with a 33% share of all actual gross recoveries of potential insider and affiliate litigation. However, due to concerns that such a provision may violate the legal distribution scheme of § 726, Green Tech and the Estate agreed to sever this clause from the Proposed Settlement. The Court, therefore, need not consider whether providing Green Tech with such a distribution is appropriate.

## The Objection & Counterproposal

The Objecting Creditors argue that (1) the Court cannot approve the settlement because it violates § 363 and the § 726 priority rules, and (2) providing Green Tech with a $2,500,000.00 claim without requiring it to prove that claim,

---

[8] At the outset of the case, the Court permitted the partial release of the bond to satisfy unpaid real property taxes due on the Property. *See* (Docs. 31 & 50).

including the supposed substantial contribution claim, is improper and not in the best interests of the Estate.[9] The morning of the hearing, the Objecting Creditors submitted exhibits that, for a variety of reasons, are not evidence and cannot be considered by the Court.[10] *See* Bankr. S.D. Fla. Local Rule 9070-1(A)(1).

The Objecting Creditors also submit their own Counterproposal under which the Objecting Creditors would pay the Estate $200,000.00 in exchange for:

(1) all of the Estate's rights related to the Property Dispute, including any potential interest in the Property itself;

---

[9] The Objecting Creditors also argued that the Proposed Settlement does not adequately describe the treatment of Pet Star Corp. and may result in negative tax implications to the Estate. The Court finds no basis to substantively address either argument.

First, Pet Star holds a $1,050,573.35 conditional secured claim against the Estate based on a mortgage attached to the Property. (Claim 3-1). The Trustee represented that a sale for the minimum proposed sale price would satisfy the Pet Star mortgage in full, resulting in net proceeds to the Estate in the amount of $320,000.00. The Trustee further advised that the Trustee and Pet Star are negotiating a potential settlement of the Pet Star claim that could only result in more favorable terms for the Estate. Though given the opportunity to do so, the Objecting Creditors failed to present any factual or legal argument contradicting or disputing the Trustee's analysis. The Court, therefore, accepts the Trustee's representation which adequately describes the treatment of Pet Star's claim.

Second, the Trustee is relying on advice from the Estate's accountant, who the Trustee represents explained that the Proposed Settlement is not likely to have net negative tax implications. *See* (Doc. 212). The Objecting Creditors, through Smith, have extensive knowledge and a longstanding relationship with the Property and its finances, but made no substantive argument to dispute the Trustee's business judgment in this regard. In the absence of any substantive argument to the contrary, the Court has no reason to question the Trustee's position or substantively address the Objecting Creditors' tax argument.

[10] Though the exhibits were untimely, the Court briefly reviewed them. The exhibits are nothing more than a graphic representation of certain of the Objecting Creditors legal arguments and contain no evidence. However, having reviewed them, the Court notes that the Objecting Creditors appear to be laboring under the misconception that, under the Proposed Settlement, the Estate would be responsible for 100% of the tax burden from the sale of the Property. The Objecting Creditors have presented no explanation for why that might be the case. Such a result necessarily presumes that the Estate is selling Green Tech's fee simple interest in the Property as its own. That is not the case. Green Tech is not transferring its interest to the Estate prior to the sale, and the Estate is not receiving all the net proceeds from the sale, nor has it agreed to be held responsible for the entire tax burden of the sale. In the absence of any explanation by the Objecting Creditors supporting this assumption, the Court sees no legitimate challenge to the Trustee's business judgment in this regard.

 (2) an assignment of all claims, known or unknown, against Green Tech and its related entities; and

 (3) an assignment of any fraudulent transfer, preferential transfer, or avoidance actions against all third parties, including the Objecting Creditors and all the related entities associated with Smith and Jenkins.

According to the Objecting Creditors, their Counterproposal is superior to the Proposed Settlement because it "guarantees prompt and full payment to all legitimate non-insider creditors and all administrative expenses, promptly, and not dependent upon the sale price of the subject property without incurring additional administrative expenses."

## Analysis

Settlement motions are considered under Fed. R. Bankr. P. 9019. However, the Objecting Creditors' arguments under § 363 and under the § 503 priority rules and § 726 distribution scheme must be considered before the Court can determine the appropriateness of the Proposed Settlement under Rule 9019 because, if the Proposed Settlement violates the Bankruptcy Code, the Court may not have the authority to approve it.

### I. 11 U.S.C. § 363

11 U.S.C. § 363 does not prevent approval of the Proposed Settlement. Under § 363(b), the Trustee may sell property of the Estate. At the hearing, the Trustee clarified that the Proposed Settlement contemplates the sale of two separate and distinct interests in the Property: (1) Green Tech's fee simple interest and (2) the Trustee's equitable interest. Here, Green Tech holds title to the Property and the Estate holds an equitable interest based on the assertions in the Property Dispute as

provided in the schedules of assets filed by the Debtor. The Objecting Creditors argue that the Property is not property of the estate because Green Tech is the record title holder and, therefore, it cannot be sold under § 363. They do not mention the Estate's equitable interest.

A. <u>The Estate's Equitable Interest</u>

One can hardly contest that the Estate's equitable interest can be sold under § 363. Under § 541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." No Rust (at the time controlled by Smith) scheduled an equitable interest resulting from the purported option, the existence of which is currently disputed by Green Tech in the Property Dispute.[11] Smith, having asserted that No Rust holds this equitable interest, cannot now dispute it. Through the Proposed Settlement, Green Tech agrees to allow the Trustee to sell whatever option rights it may have in the Property alongside Green Tech's fee simple interest, to provide the buyer with clear title. As property of the estate, the equitable interest may be sold under § 363.

This makes perfect sense. If the Estate's potential equitable interest were not included in the sale, the Estate would conceivably retain the right to exercise the option against the buyer. The Court cannot envision why a buyer would agree to pay fair market value for the Property under those circumstances. The sale provides that the Property will be sold free and clear of that potential encumbrance so that clear title is provided to the buyer thereby maximizing the sale proceeds.

---

[11] *See* (Doc. 19).

### B. Green Tech's Fee Simple Interest

The Court notes that it is unclear from the Proposed Settlement, especially considering Green Tech's and the Estate's statements at the hearing, whether the parties intend to sell Green Tech's fee simple interest in the Property under § 363(b) or whether it would be sold simultaneously with the Estate's equitable interest but without Court approval. However, if the Estate and Green Tech do intend to sell Green Tech's interest under § 363(b), such a sale may be possible provided that Green Tech consents. *See* 11 U.S.C. § 363(f)(2) ("The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, [ ] if . . . such entity consents".). Regardless, there is certainly nothing inherently problematic with the sale of Green Tech's fee simple interest together with the Estate's equitable interest as contemplated. On the contrary, to sell the interests separately would seem to make no sense given the goal to maximize the sale proceeds, which in turn will maximize the Estate's share, by giving clear title to the buyer.

## II. Priority Rules and Distribution Scheme

The Proposed Settlement provides Green Tech with a $2,500,000.00 allowed general unsecured claim to settle all claims Green Tech has against the Estate, including a secured claim in the Bond and a potential administrative claim based on Green Tech's substantial contribution to the Chapter 11 phase of the case.[12] The

---

[12] The Proposed Settlement initially contained a clause that allowed Green Tech to be paid a direct share of any insider or affiliate litigation proceeds, but the Objecting Creditors identified that as a potential priority issue under § 726, so the Trustee and Green Tech severed that clause.

Objecting Creditors believe that because Green Tech has not proven its administrative claim, the Proposed Settlement violates § 503(b), and because Green Tech is to receive proceeds directly from the sale of the Property ahead of general unsecured creditors, the Proposed Settlement violates § 726. The Proposed Settlement does not violate either provision.

Section 503(b)(3)(D) does not apply. Under 11 U.S.C. § 503(b)(3)(D), "the actual, necessary expenses" of "a creditor . . . in making a substantial contribution in a case under . . . chapter 11 of this title" can be considered administrative expenses and, therefore, higher in priority to general unsecured claims. Green Tech may be entitled to an administrative claim based on its efforts in the Chapter 11 phase of this case, though the validity and value of such a potential administrative claim are unclear and not before the Court. Rather than litigate Green Tech's entitlement to an administrative claim, the Proposed Settlement suggests that it be resolved along with Green Tech's other claims against the Estate through the single allowed general unsecured claim. In short, Green Tech is not receiving an administrative claim, so there is no possibility that the Proposed Settlement violates § 503(b) by providing it with one. The Objecting Creditors' argument, therefore, only applies to the extent that it affects the reasonableness analysis under Rule 9019.

The Objecting Creditors further argue that the Proposed Settlement violates § 726, but that section is similarly not implicated here. "In Chapter 7 liquidations, priority is an absolute command—lower priority creditors cannot receive anything until higher priority creditors have been paid in full." *Czyewski v. Jevic Holding*

*Corp.*, 580 U.S. 451 (2017). In *Jevic*, the Supreme Court addressed the priority issues in a Chapter 11 context, not in a Chapter 7 context. There, the Supreme Court held that a bankruptcy court cannot approve a structured dismissal of a Chapter 11 case that provides for distributions that do not follow the Bankruptcy Code's ordinary priority rules without the affected creditors' consent. Bankruptcy courts considering similar issues have concluded that courts cannot approve settlements in a Chapter 7 case that violate priority rules. *See, e.g.*, *In re Tovan Construction, Inc.*, No. 19-12423-KHK, 2021 WL 1235359 (Bankr. E.D. Va. Mar. 31, 2021).

The Objecting Creditors argue that, by receiving money directly from the sale of the Property, Green Tech is skipping the line and getting paid out of turn.[13] That is not the case. Green Tech holds title to the Property in fee simple and is getting paid based on its direct interest in the Property upon its sale. The Proposed Settlement does not contemplate the transfer of Green Tech's interest to the Estate prior to the sale, thereby making the proceeds resulting from the sale of Green Tech's fee interest property of the Estate. On the contrary, Green Tech asserts it owns the Property and will prevail in the Property Dispute. The Proposed Settlement merely provides that Green Tech and the Estate will sell their respective interests in the Property together and each will receive agreed upon amounts based on those separate interests. In short, Green Tech's fee simple interest in the Property is not property of the estate, and the sale proceeds it receives on account of its interest are not subject to § 726. As

---

[13] The Objecting Creditors made the same argument with respect to the litigation proceeds clause of the Proposed Settlement, but the Estate and Green Tech have severed that clause. The Court, therefore, need not consider that issue further.

a result, Green Tech can be paid directly from the sale of the Property as contemplated under the Proposed Settlement without implicating the distribution scheme under § 726 as long as the Proposed Settlement otherwise complies with Rule 9019.

### III. Rule 9019

The Proposed Settlement satisfies Fed. R. Bankr. P. 9019. *See* Fed. R. Bankr. P. 9019(a) ("On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."). When considering a proposed settlement under Rule 9019, the Court may consider nearly any potential factor that weighs on the proposal's reasonableness, but commonly considered factors include:

(1) the probability of success in the litigation,

(2) the difficulties, if any, to be encountered in the matter of collection,

(3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending, and

(4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990). The standard for approving such a settlement is generally very low, and the Court is instructed to approve any settlement that does not fall "below the lowest point in the range of reasonableness." *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir. 2007). "The Court is not expected to hold a 'mini-trial' to determine the merits of each and every claim subject of a disputed settlement, but must simply be convinced that a trustee's judgment is based upon a sound assessment

of the situation." *In re Harbour E. Dev., Ltd.*, No. 10-20733-AJC, 2012 WL 1851015, at *1 (Bankr. S.D. Fla. May 21, 2012) (cleaned up).

    A.    <u>Probability of Success</u>

The Trustee argues that the Court's prior statements make clear that it will be difficult to win the Property Dispute and related Objection to Claim. In its Conversion Order, the Court stated that No Rust's—now the Trustee's—likelihood of success in the Property Dispute is "not reasonably likely" because of the "undeniably high burden" needed to prove the existence of an enforceable oral option contract for sale of land. While it cannot be said that the Trustee has no chance to prevail in the litigation, the Trustee has appropriately factored into the terms of the Proposed Settlement the odds against the Estate.

Further, what does victory look like for the Trustee? Winning the Property Dispute would merely provide the Estate with an option to purchase the Property, and it lacks the funds to do so. Though the Trustee might be able to monetize the option, the mere fact that the Estate is not presently capable of executing under the option, on its face, further reduces the likelihood of success in the litigation because, to prevail in a suit for specific performance, Florida law requires that she also establish that she is ready, willing, and able to perform under the contract. *See Shapiro v. Jacobs*, 948 So. 2d 880, 882 (Fla. 3d DCA 2007).

    B.    <u>Difficulties in Collection</u>

Because the Property Dispute seeks specific performance, collection is not necessarily an issue here. However, the Trustee's analysis of this factor highlighted

a related problem— monetizing the purported option presents a significant hurdle. The Court agrees. Because the Estate lacks the funds to exercise the option itself, it would likely have to assign the rights in the option before trial. That would mean the Estate must assign the purported option before it even proves the option exists. The only parties who seemingly have any interest in that assignment are the Debtor, Mr. Smith, and his related entities; their Counterproposal gives the Estate $200,000.00 in exchange for significant consideration, including—but well beyond—a transfer of the purported option. It is unclear how much the Trustee could sell the purported option for on the open market, and the Objecting Creditors have not put forth any legal or factual basis to conclude that selling it and allowing another entity to continue the litigation is a superior alternative to the Proposed Settlement with Green Tech.

    C.    <u>Complexity</u>

Litigating and concluding a trial on the Property Dispute would likely require significant time, effort, and administrative expense. Further, the Trustee emphasizes that any potential trial in the Property Dispute, even if the Trustee prevailed, would almost certainly be mired by a years-long appellate process. Put simply, winning this case would require significant effort and expenditure on the part of the Trustee. And again, even if the Trustee were to prevail at both the trial and appellate level, the Trustee would have to find the funds to exercise the option. Especially when balanced against the relatively low likelihood of success in the Property Dispute, settling it on the terms proposed is more than reasonable.

D. <u>Interest of Creditors</u>

The Trustee argues that the Settlement "all but guarantees a meaningful recovery in context of the uphill posture of this case as the Trustee has found it, and minimizes or eliminates further professional fees and costs associated with further litigation with Green Tech." The Objecting Creditors disagree, arguing that (1) the structure of the sale deprives the buyer of 11 U.S.C. § 363(m) protections, likely reducing the sale price, (2) the Estate should not allow Green Tech's claim in the increased amount of $2,500,000.00 without it having to prove the validity and amount of the entire claim, and (3) the Objecting Creditors' Counterproposal is a superior alternative to the Proposed Settlement.

1. <u>11 U.S.C. § 363(m)</u>

The Objecting Creditors' concerns regarding § 363(m), even if accurate, do not make the Proposed Settlement unreasonable. Under § 363(m), "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." According to the Objecting Creditors, the Proposed Settlement will net less money from the sale of the Property because the Trustee cannot sell Green Tech's interest under § 363(b),

leaving the prospective buyer without § 363(m) protection. The Court finds the Objecting Creditors' argument questionable at best and concludes that, even if the Court assumes the Objecting Creditors are legally correct, the Proposed Settlement is still reasonable.

First, it strikes the Court as inconsistent with the interests of the Objecting Creditors to suggest that a buyer could not benefit from § 363(m) protections because, assuming the premise of the Objecting Creditors' argument, doing so limits the value of the Property that is being sold for their own benefit. The Court must assume such an objection, although phrased as a friendly worning, is being raised not out of concern for the Estate, but as a strategy to prevent the sale. This motivation is antithetical to the interests of the Estate and all other creditors.

Second, depending on how the sale is structured—which Green Tech and the Trustee are still clarifying—the buyer may be entitled to § 363(m) protections. Under § 363(f)(2), "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate [ ] if . . . such entity consents." If Green Tech consents to its fee simple interest being sold under § 363(b), then the entire sale could occur under § 363(b) and (f), and the buyer of the Property would consequently be protected under § 363(m). Though the Court does not decide this issue now, this outcome certainly appears possible.

Third, the Objecting Creditors' argument that the Property is worth less if the buyer does not have § 363(m) protections is a red herring. Here, the Court has already determined that the Estate's equitable interest in the Property, through its purported

option asserted in the schedules and the Property Dispute, is being sold under § 363(b). Therefore, any qualified buyer may receive § 363(m) protection with respect to any risk on appeal relating to the purported option.

The Objecting Creditors have not articulated to the Court any reason the buyer would need § 363(m) protection with respect to the purchase of Green's Tech's fee simple interest in the Property. After all the only challenge to Green Tech's fee simple interest, of which the Court is aware, is the Debtor's purported option for which the buyer may receive § 363(m) protection. Presumably, the buyer will receive title insurance and other protections under Florida state law that seem more than adequate with respect to Green Tech's fee simple interest.[14] There is no basis to assume that a lack of § 363(m) protection, under these circumstances, exposes a potential buyer of the Property to substantial risk, thereby affecting the sale price to such a degree that the Proposed Settlement becomes unreasonable.

Fourth, even assuming the Objecting Creditors are correct that potential buyers of the Property will not have § 363(m) protection and the lack of such protections will decrease the sale price, the Proposed Settlement is still reasonable and in the best interest of the Estate and Creditors. The Proposed Settlement contains a minimum sale price and, according to the Trustee, the Estate will likely

---

[14] For example, Florida law protects bona fide purchasers of real property where "(1) the purchase obtained legal title to the challenged property, (2) the purchaser paid the value of the challenged property, and (3) the purchaser had no knowledge of the claimed interest against the challenged property and the time of the transaction." *2000 Presidential Way, LLC v. Bank of New York Mellon*, 326 So. 3d 64, 68 (Fla. 4th DCA 2021) (holding that a buyer had constructive notice of an assignment of mortgage recorded in the public records and consequently took title to certain real property subject to the mortgage). The Court is unaware of any challenges related to the Property other than the Property Dispute, which by operation of the Proposed Settlement, will be resolved.

receive more than $300,000.00 if the Property is sold at the minimum price. Absent the Proposed Settlement, to receive any distribution from the sale of the Property, the Estate would have to (1) litigate the Property Dispute, which the Trustee has already explained would require significant time and resources; (2) win it, which the Court has already explained is "not reasonably likely";[15] and (3) somehow find a way to pay the funds necessary to execute the option. In short, absent the Proposed Settlement, it is unlikely the Estate would receive any proceeds from the sale of the Property and would have to expend considerable effort for that privilege. Therefore, even assuming every legal argument raised by the Objecting Creditors regarding § 363(m) protection, the Proposed Settlement is still reasonable under Rule 9019.

        2.     Green Tech's Claim

The Trustee's decision to settle all disputes with Green Tech by providing it with a $2,500,000.00 allowed general unsecured claim is reasonable. As previously explained, the Trustee agreed to allow Green Tech's claim at this increased number as a global resolution of all disputes with Green Tech, including the Property Dispute, the Objection to Claim, and Green Tech's potential substantial contribution administrative claim. The Objecting Creditors argue that, to determine whether allowing the claim in this amount is in the interest of the Estate and creditors, the Court first must conduct an evidentiary hearing.[16] However, this flouts the basic

---

[15] (Doc. 193 at 26).

[16] The Objecting Creditors specifically noted that they believed that, at the very least, Green Tech and the Trustee must provide evidence of Green Tech's potential administrative claim which must consider Green Tech's self-interest. In the Eleventh Circuit, courts do not consider whether the creditor's actions were self-interested. *See Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1339 (11th Cir. 2000) (explaining that "a creditor's motive in taking actions that benefit

principle that settlements are designed to relieve the parties and the Court of the need to conduct a "mini-trial" on the merits of the contested claims that are being resolved or the value of those claims. *See Harbour E. Dev. Ltd.*, 2012 WL 1851015 at *1. Instead, the Court need "simply be convinced that a trustee's judgment is based upon a sound assessment of the situation." *Id*. After all, requiring an evidentiary hearing on the merits of the settled claims as a prerequisite to approving the settlement defeats the entire purpose of the settlement in the first instance—to avoid delay, risk, and administrative expense associated with litigating the merits. The Objecting Creditors have failed to articulate how the Trustee's decision to resolve all the disputes with Green Tech by agreeing to provide it with a $2,500,000.00 general unsecured claim falls "below the lowest point in the range of reasonableness." *Martin*, 490 F.3d at 1275.

### 3. Objecting Creditors' Counterproposal

The Objecting Creditors submitted a Counterproposal that they believe is superior to the Proposed Settlement. Reviewing them side-by-side:

| Asset | Proposed Settlement | Counterproposal |
|---|---|---|
| Guaranteed Money | $182,000.00 | $200,000.00 |
| Property Sale | Unknown, but the Trustee estimates that the Estate's distribution | $0.00 |

---

the estate has little relevance in the determination whether the creditor has . . . made a substantial contribution to a case"); *In re Ocean Blue Leasehold Prop. LLC*, 414 B.R. 798, 807 (Bankr. S.D. Fla. 2009). To satisfy the substantial contribution test in this circuit, the creditor's action must have (1) directly and demonstrably benefitted the estate; (2) fostered and enhanced, rather than retard or interrupt the process of the reorganization, and (3) be considerable in amount, value, or worth. *See Ocean Blue Leasehold Prop. LLC*, 414 B.R. at 807. It is possible for Green Tech to prevail under this standard and it is certainly well within the realm of reasonableness for the Trustee to review Green Tech's actions in the Chapter 11 phase of this case and determine that the risks of Green Tech seeking an administrative claim and winning outweigh the cost of settling with Green Tech by providing it with a larger allowed general unsecured claim.

|  | under the minimum sale numbers exceeds $300,000.00 |  |
|---|---|---|
| Green Tech's Claim | $2,500,000.00, reduced—at least in part—from the proceeds from the sale of the Property | $1,948,339.00 as filed subject to objection |
| Proceeds from Actions Against Green Tech & Related Entities | $0.00 (Released) | $0.00 (Assigned to the Objecting Creditors) |
| Proceeds from Actions Against Insiders & Affiliates | Unknown, but possibly significant. | $0.00 (Assigned to the Objecting Creditors or settled in full by the $200,000.00) |

The Counterproposal, at its very best, is only marginally better than the Proposed Settlement at its very worst. Even if the Trustee and Green Tech are unsuccessful in selling the Property at the minimum price of $3,000,000.00 and the Trustee is unable to recover any fraudulent or avoidable transfers, the Estate only receives $20,000.00 more under the Counterproposal. Again, this is if everything goes wrong with the Proposed Settlement. The Proposed Settlement, if successful, would generate significantly more for the Estate. There is no clear basis for the Court to supplant its business judgment for the Trustee's, especially where the Counterproposal at its best is only marginally better than the worst-case scenario of the Proposed Settlement.

Accordingly, the Court **ORDERS** that the *Motion to Compromise Controversy* (Doc. 218) is **GRANTED** as described in the Court's prior Order. (Doc. 257).

# # #

*Copies to Zachary Malnik, Esq., who is directed to serve this Order on all interested parties.*